**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**JAMES KENNETH HEDGEPETH**                                                                          **PLAINTIFF**

**V.**                                                                **CAUSE NO.: 1:05CV142-SA-SAA**

**BLUE CROSS AND BLUE SHIELD OF MICHIGAN**                                  **DEFENDANT**

## MEMORANDUM OPINION

Comes now before this Court, Plaintiff James Hedgepeth's Motion for Summary Judgment. Also before the Court is Defendant Blue Cross and Blue Shield of Michigan's Motion for Summary Judgment. After reviewing the motion, response, rules, and authorities, the Court makes the following findings:

*Factual and Procedural Background*

Rugged Liner, a Michigan-based company, contracted with Blue Cross and Blue Shield of Michigan ("BCBSM") for the procurement of insurance coverage for Rugged Liner employees. Plaintiff James Hedgepeth was a Mississippi-based employee of Rugged Liner and became a participant in the ERISA Plan administered by BCBSM.

A contract among the Blue Cross insurance companies provides that each Blue Cross company will pay a claim to the extent that it would be paid by the Blue Cross and Blue Shield company in the state where the claim incurred. Therefore, even though Hedgepeth's insurance policy was issued by BCBSM, in the event he sought medical services outside of Michigan, that claim would be paid by Michigan to the same extent that Blue Cross and Blue Shield of Mississippi would have paid the claim of a Mississippi insured.

Hedgepeth incurred medical expenses for pre-scheduled inpatient and outpatient services at the North Mississippi Medical Center ("NMMC") from December 9, 2003, until March 8, 2004,

totaling $87,809.00. Plaintiff filed a claim on BCBSM for those services. Because the company would only pay what Blue Cross and Blue Shield of Mississippi would pay, and there was no contract between Blue Cross and Blue Shield of Mississippi and NMMC, BCBSM denied his claim for benefits. In fact, the Blue Cross and Blue Shield Mississippi/NMMC contract expired on November 30, 2003, and a new agreement was not reached until August 31, 2005, approximately eighteen months after Plaintiff's last treatment.

After following the claims processing appeal procedure, including a managerial level conference, Hedgepeth filed suit in the Northern District of Mississippi against Blue Cross and Blue Shield of Mississippi, BCBSM, and the BlueCross BlueShield Association. In his complaint, the Plaintiff noted that all the Blue Cross companies were acting as joint venturers and were therefore liable for each others actions. The Plaintiff alleged that Blue Cross and Blue Shield of Mississippi failed to negotiate in good faith with NMMC and insisted on unreasonable discounts before it would continue to contract with NMMC, resulting in a breach of the Defendants' fiduciary duty owed to the Plaintiff under ERISA. Moreover, Hedgepeth alleges that BCBSM arbitrarily denied his claim, and that BCBSM is precluded from denial under an ERISA-estoppel theory due to material misrepresentations that company made regarding his coverage.

On August 10, 2006, district judge Glen Davidson sent Hedgepeth's claim back to the plan administrator for further adjudication due to a new participating provider agreement entered into by NMMC and Blue Cross and Blue Shield of Mississippi, effective September 1, 2005. After Plaintiff supplemented the administrative record with a press release regarding the renewed agreement, the Plan Administrator reached the same conclusion and denied Hedgepeth's claim for benefits.

When the case returned to the district court for adjudication, Blue Cross and Blue Shield of

Mississippi and BlueCross BlueShield Association were dismissed as party defendants. Therefore, BCBSM is the only defendant in this action now.

Plaintiff and Defendant filed motions for summary judgment.

*Standard of Review*

The Employee Retirement Income Security Act ("ERISA") furnishes district courts with jurisdiction to review determinations made by employee benefits plans, including health benefit plans. See 29 U.S.C. § 1132(a)(1)(B); Baker v. Metro. Life Ins. Co., 364 F.3d 624, 629 (5th Cir. 2004). An ERISA plan administrator's factual determinations are reviewed for abuse of discretion. Vercher v. Alexander & Alexander Inc., 379 F.3d 222, 231 (5th Cir. 2004); see also Martin v. SBC Disability Income Plan, 257 Fed. Appx. 751, 753-54 (5th Cir. 2007). An abuse of discretion occurs when a claim is denied "[w]ithout some concrete evidence in the administrative record." Gooden v. Provident Life & Accident Ins. Co., 250 F.3d 329, 332-34 (5th Cir. 2001). "Under the abuse of discretion standard, if the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail." Corry v. Liberty Life Assurance Co. of Boston, 499 F.3d 389, 397 (5th Cir. 2007) (quoting Ellis v. Liberty Life Assurance Co. of Boston, 394 F.3d 262, 273 (5th Cir. 2004)) (internal punctuation omitted). "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc., 168 F.3d 211, 215 (5th Cir. 1999) (internal quotation marks omitted). Thus, the fiduciary's decision must be affirmed if it is supported by substantial evidence. Id. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Ellis, 394 F.3d at 273.

In resolving factual disputes as to the merits of an ERISA claim, the court's review is limited to the administrative record. Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 300 (5th Cir. 1999). The plaintiff bears the burden of demonstrating that he is entitled to benefits under the plan's terms. See Perdue v. Burger King Corp., 7 F.3d 1251, 1254 (5th Cir. 1993); see also Lewis v. CNA Group Life Assurance Co., 414 F. Supp. 2d 652, 654-55 (S.D. Miss. 2006). This court must determine whether substantial evidence exists to show that BCBSM's decision to deny benefits was reasonable. Ellis, 394 F.3d at 273; Vega, 188 F.3d at 298; Gooden, 250 F.3d at 331.

Because BCBSM is a plan administrator that both evaluates claims for benefits and pays benefits, it has a conflict of interest. See Metro. Life Ins. Co. v. Glenn, No. 06-923, — U.S. —, 128 S. Ct. 2343, 2355 (June 19, 2008). A reviewing judge must take account of this conflict in determining whether the administrator has abused its discretion, but such a conflict is not necessarily outcome-determinative in the court's fact-driven inquiry. See id. at 2350.

*Discussion and Analysis*

A. *NMMC as a "Participating Provider"*

Plaintiff claims that pursuant to the plain language of the Plan, NMMC is now a "participating provider" under NMMC and Blue Cross and Blue Shield of Mississippi's new agreement; therefore, Plaintiff's medical expenses are covered under the plan. The Defendant rebuts that only the status of NMMC at the time services were rendered is relevant, and as Hedgepeth's medical treatment occurred during the twenty-one month period when NMMC was not a "participating provider," the Plan Administrator was correct in denying his claim.

BCBSM has been given under the terms of the Plan, "the power and discretion to construe

4

the terms of, and to determine all questions pertaining to the administration, interpretation, and application of this Agreement, certificates and riders that involve eligibility for the benefits and the payment or denial of claims." Under the terms of the Plan, a "participating hospital" is a hospital "that has signed a participation agreement with BCBSM to accept the approved amount as payment in full." Conversely, a "nonparticipating hospital" is a hospital that "has not signed a participation agreement." In Hedgepeth's final denial letter dated March 6, 2007, BCBSM determined that as NMMC did not have a participation agreement with any Blue Cross Blue Shield entity during the period of December 9, 2003, to March 8, 2004, when Hedgepeth received hospital services from NMMC; thus, NMMC was a "nonparticipating hospital" under the plan contract.

This Court cannot say that BCBSM abused its discretion as plan administrator by construing the terms "has signed" requiring a participating provider agreement to be in place at the time services were rendered. This interpretation of the Plan language is reasonable. Further, Plaintiff has failed to prove that such interpretation is arbitrary and capricious.

*B. Fiduciary Duty*

In his complaint, Hedgepeth claims that because BCBSM is a joint venturer with Blue Cross and Blue Shield of Mississippi, BCBSM breached its fiduciary duty to engage in good faith negotiations with NMMC and pay claims of medical subscribers. BCBSM maintains that it is an ERISA fiduciary only for the purposes of claims processing. Indeed, Rugged Liner's employee benefit plan expressly notes that except for its status as the named claims administrator, BCBSM "is not a named fiduciary for any purpose under ERISA and its responsibilities are limited to the processing and payment of claims."

5

A joint venture is "an association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, efforts, skill and knowledge" and with an understanding that they are to share in profits or losses and each to have a voice in its management." Hults v. Tillman, 480 So. 2d 1134, 1142 (Miss. 1985). Plaintiff has failed to present any evidence of a possible joint venture between BlueCross BlueShield Association, Blue Cross and Blue Shield of Mississippi, and BCBSM. Moreover, the Fifth Circuit has held that when a plan is terminated, amended, or renegotiated, the plan administrator is not acting as a fiduciary, and "*thus cannot violate its fiduciary duty*." Izzarelli v. Rexene Prods. Co., 24 F.3d 1506, 1524 (5th Cir. 1994). Furthermore, nothing in the contract between BCBSM and its enrollees limits BCBSM's ability to make significant changes in its participating hospitals. Hedgepeth's Plan did not give him the right to receive the services of a specific designated hospital such as NMMC. As such, there is no fiduciary duty breached by Blue Cross and Blue Shield's failure to reach an agreement with the hospital from which Plaintiff received medical services.

*C. ERISA-Estoppel*

In order to establish an ERISA-estoppel claim, a plaintiff must prove: (1) a material misrepresentation, (2) reasonable and detrimental reliance upon that representation, and (3) extraordinary circumstances. Mello v. Sara Lee Corp., 431 F.3d 440, 444-45 (5th Cir. 2005). "Because the application of ERISA-estoppel is a legal theory rather than an interpretation of the Plan's terms, it should be reviewed *de novo*." Id.; see also Rhorer v. Raytheon Eng'rs & Const'rs, Inc., 181 F.3d 634, 639 (5th Cir. 1999).

Hedgepeth contends that based on his review of the brochure "Benefits at a Glance," he was

lead to believe that his charges from NMMC would be covered up to 60% after payment of the deductible. The "Benefits at a Glance" brochure summarizes the coverage of claims for "in network" and "out of network" providers. If services are procured from an in-network provider, the brochure notes that 80% of most procedures and amenities would be covered. If service is provided by an out of network provider, however, those benefits dip to 60% coverage. While the Plan does not define "in network" and "out of network," BCBSM contends that "in network" and "out of network" corresponds with "panel" and "nonpanel" providers, which are defined in the documents. Panel and nonpanel providers, just as "in network" and "out of network" providers, are participating providers that have either agreed to provide services under a preferred provider organization or not.

There are also documents in the administrative record which intimate that Plaintiff contends an unnamed BCBSM customer service representative told him that his claim would be 60% covered as an "out of network" provider. However, according to BCBSM, both "out of network" and "in network" providers are participating providers, so neither classification would apply to Hedgepeth's treatment at NMMC, a nonparticipating hospital.

"ERISA-estoppel is not permitted if based on purported oral modification of plan terms." Mello, 431 F.3d at 446 (internal quotation marks and citation omitted); Weir v. Federal Asset Disposition Ass'n, 123 F.3d 281, 290 (5th Cir. 1997) (expressly rejecting an estoppel cause of action under ERISA in suits seeking to enforce rights to benefits based on purported oral modifications of plan terms). This is because ERISA requires "every employee benefit plan" to be "established and maintained pursuant to a written instrument." Mello, 431 F.3d at 446. (internal quotation marks omitted); see also 29 U.S.C. § 1102(a)(1). This makes sense, because "the writing requirement gives the plan's participants and administrators a clear understanding of their rights and obligations."

Mello, 431 F.3d at 446. Further, Plaintiff's Plan specifically states, "BCBSM employees, agents or representatives cannot agree to change or add to the benefits described in this certificate. **Any changes must be in writing and approved by BCBSM and the Michigan Insurance Commissioner.**"

Hedgepeth has failed to show why it was reasonable for him to rely on an oral representation changing his plan's coverage for non-participating providers given this court's clear guidance in Mello. Moreover, a review of the administrative record reveals no sworn statement, testimony, or affidavit from Hedgepeth asserting those oral representations were made. As such, his bare allegations of an unnamed customer service representative's representations do not create a genuine issue of material fact. Therefore, he cannot make out a claim for ERISA-estoppel on the basis of an oral representation.

There can also be no "reasonable reliance on informal documents in the face of unambiguous Plan terms." Mello, 431 F.3d at 447; see High v. E-Systems, Inc., 459 F.3d 573, 580 (5th Cir. 2006) ("[A] 'party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party.'" (quoting Sprague v. GMC, 133 F.3d 388, 404 (6th Cir. 1998))). The "Benefits at a Glance" brochure includes the following language:

> This is intended as an easy-to-read summary. It is not a contract. Additional limitations and exclusions may apply to covered services. For an official description of benefits, please see the applicable Blue Cross Blue Shield certificate and riders.

As noted directly below, the Plan language concerning coverage for nonparticipating providers is unambiguous and clear. The Plan provides that where the provider is nonparticipating, coverage is "limited to services needed to treat an accidental injury or medical emergency." There

is no dispute that NMMC was a nonparticipating provider at the time services were provided to Hedgepeth.

Based on our review of the record, Hedgepeth has not satisfied either of the first two elements of ERISA-estoppel. First, he has not established any material misrepresentation. When the Plan documents are examined as a whole, it is clear that the only nonparticipating hospital services covered are for accidental injury or emergency services. Regardless of whether Plaintiff was confused between the terms "out of network," "in network," "nonparticipating provider," and "nonpanel provider," he had unambiguous Plan language that controlled his policy. Even assuming that there had been a material misrepresentation, the Plaintiff has not established the second element. Though Hedgepeth's reliance may have been detrimental, it was not reasonable, as the Plaintiff relied on an informal benefits brochure and an employee's assertions rather than the unambiguous provisions provided in the plan. Accordingly, the doctrine of ERISA-estoppel is inapplicable to the facts of Hedgepeth's case.

*D. BCBSM's Denial of Benefits*

When discussing coverage, the BCBSM Plan provides:

> If the provider is **nonparticipating**, you will need to pay most of the charges yourself. Your bill could be substantial because BCBSM coverage at nonparticipating hospitals is limited to services needed to treat an accidental injury or medical emergency.

*Plan*, 3.29. The Plan further defines "nonparticipating hospital" as "[a] hospital that has not signed a participation agreement with BCBSM to accept the approved amount as payment in full. There is no dispute that at the time services were rendered to James Hedgepeth, NMMC was a nonparticipating hospital in relation to Blue Cross and Blue Shield. Accordingly, for his claim to

be covered, Plaintiff need only prove that the treatment provided was due to an accidental injury or medical emergency. Although the medical records are not provided for this determination, there is no dispute that Hedgepeth had a previously-scheduled appointment and that all follow-up visits to the NMMC were not for accidental injuries or medical emergencies. As such, his claim was properly denied, and the plan administrator did not abuse his discretion in failing to pay Hedgepeth's claim.

*Conclusion*

Under the terms of the Plan, which controls this ERISA litigation, NMMC was a nonparticipating provider at the time Hedgepeth's medical treatment at that facility was rendered. BCBSM did not owe any fiduciary duty to Plaintiff with respect to good faith negotiations as plan administrator. Further, caselaw is clear that in conflicts over employee benefits plans, the terms of the Plan control. Thus, Plaintiff's reliance on an informal "Benefits at a Glance" brochure and unnamed service representative was unreasonable. Accordingly, BCBSM's decision to deny benefits to James Hedgepeth because his medical treatment at a nonparticipating hospital was not for an accidental injury or a medical emergency was not arbitrary and capricious and not an abuse of discretion. Thus, the plan administrator's decision to deny James Hedgepeth's claim is AFFIRMED.

A separate order in accordance with this opinion shall issue this day.

This the __29th__ day of July, 2008.

                                                  **/s/ Sharion Aycock**
                                                **U.S. DISTRICT JUDGE**